UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 23-CV-60810-SCOLA/GOODMAN

HARTFORD FIRE INSURANCE COMPANY,

      Plaintiff,

v.

TEDERRA SIMS,

      Defendant.

_____/

**REPORT AND RECOMMENDATIONS ON
PLAINTIFF'S AMENDED MOTION FOR DEFAULT JUDGMENT**

In this breach of contract action, Plaintiff Hartford Fire Insurance Company ("Hartford" or "Plaintiff") filed an amended motion for default judgment against Tederra Sims ("Defendant"). [ECF No. 18]. Defendant has not filed a response to Plaintiff's motion (or otherwise participated in this lawsuit), and the response deadline has now expired.

Senior United States District Judge Robert N. Scola, Jr. referred this motion to the Undersigned "for a report and recommendations, consistent with 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of the Local Magistrate Judge Rules." [ECF No. 19].

For the reasons discussed below, the Undersigned **respectfully recommends** that the District Court **grant** Plaintiff's amended motion **in part** and then **deny in part** its

request for attorneys' fees and costs.

## I.    Background

Plaintiff filed a Complaint [ECF No. 1] alleging that Defendant breached their Indemnity Agreement. According to Plaintiff, Defendant approached it, the Surety, "to issue a bond in connection with a probate estate" in Florida. *Id.* at ¶ 5. The parties entered into an Indemnity Agreement as a prerequisite to Plaintiff issuing a bond.[1] *Id.* at ¶¶ 6–7. Under that Agreement, Defendant, as Indemnitor, is required to indemnify Plaintiff, as the Surety, from any loss. *Id.* at ¶ 15. Following their Agreement, Plaintiff issued a probate bond with a penal sum of $125,000 on behalf of Defendant. *Id.* at ¶ 9.

After Plaintiff issued the bond, the Florida probate court removed and replaced Defendant as an Administrator of the estate. *Id.* at ¶ 10. Multiple people had accused Defendant of misappropriating funds and consequently asserted claims against Plaintiff's bond. *Id.* at ¶ 12. On October 19, 2022, the Probate Court found that there was a misuse of estate funds and ordered Defendant, as Indemnitor, to provide a certified check for $580,347.24, payable to the estate. *Id.* at ¶ 11.

Plaintiff states that it has suffered losses of at least $129,968.10 as of April 3, 2023

---

[1]    Plaintiff issued Probate Bond No. 21BSBHW1253 in the case, *In Re Estate of Octavya Barley Farmer*, PRC 17-4657 in the Broward County Circuit Court. [ECF Nos. 1, ¶ 9; 18-1, ¶ 6].

because of the claims against its bond.[2] *Id.* at ¶ 13. On February 13, 2023, Plaintiff demanded that Defendant repay the losses it suffered, and Defendant never complied. *Id.* at ¶¶ 16–18.

Plaintiff properly served Defendant, via personal delivery on her husband/co-resident, with the Summons and Complaint on May 8, 2023. [ECF No. 8]. Thereafter, Plaintiff moved for and obtained a Clerk's Default against Defendant for failure to appear, answer or otherwise plead to the Complaint. [ECF Nos. 9; 11].

The following month, Plaintiff filed a motion for default judgment. [ECF No. 13]. The Undersigned reviewed Plaintiff's motion and recommended that it be denied because it was deficient. [ECF No. 15]. Judge Scola agreed and he consequently denied Plaintiff's motion without prejudice. [ECF No. 16]. Plaintiff then amended its motion [ECF No. 18], which the Undersigned will discuss below.

## II.     Applicable Legal Standards

### A.     Default Judgment

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A

---

[2]     Plaintiff amended this number from $129,968.10 to $136,363.36 when it filed its motion due to the work completed during the interim.

3

party may then apply to the district court for a default final judgment. Fed. R. Civ. P. 55(b)(2); *Alfa Corp. v. Alfa Mortg. Inc.*, 560 F. Supp. 2d 1166, 1173 (M.D. Ala. 2008).

A court may not enter a default final judgment based solely on the existence of a clerk's default. *Id.* at 1174. Instead, a court is required to examine the allegations to see if they are well-pleaded and present a sufficient basis to support a default judgment on the causes of action. *Id.* (citing *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[3] Only the well-pled factual allegations are admitted in a default judgment. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

The decision whether to enter a default judgment "is committed to the discretion of the district court." *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1576 (11th Cir. 1985). Default judgments are "generally disfavored" because this Circuit has a "strong policy of determining cases on their merits." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–45 (11th Cir. 2015). In addition to assessing whether the complaint adequately sets forth facts to support the plaintiff's claims, a court considering the entry of a valid default judgment must "have subject-matter jurisdiction over the claims and have personal jurisdiction over the defendant." *Osborn v. Whites & Assocs. Inc.*, No. 1:20-cv-02528, 2021

---

[3]     In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued before September 30, 1981 would become binding precedent in the Eleventh Circuit.

WL 3493164, at *2 (N.D. Ga. May 20, 2021) (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1215 & n.13 (11th Cir. 2009)).

A court may conduct a hearing on a motion for default judgment when, in order "to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2); *see also Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting that Rule 55(b)(2) "leaves the decision to hold an evidentiary hearing to the court's discretion").

**B.    Attorney's Fees**

Typically, under the "American Rule", "each party bears its own attorney's fees." *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1331 (11th Cir. 2002) (acknowledging "the general applicability of the American Rule regarding fee shifting, i.e., that each party bears its own attorneys' fees"); *Panama Shipping Lines, Inc. v. Ciramar Int'l Trading, Ltd.*, No. 08-21213-CIV, 2009 WL 812714, at *3 (S.D. Fla. Mar. 26, 2009) ("The American Rule stands for the proposition that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser."). Thus, "absent statute or enforceable contract, litigants pay their own attorneys' fees." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975).

The party seeking attorney's fees bears the burden of establishing entitlement via statute or enforceable contract. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) ("[F]ee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." (quoting *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)). And "[b]ecause the right to attorney's fees must be found in a contract or statute, the specific text of the contractual or statutory provision granting the right is critical to determining an award of fees." *Cabrera v. Haims Motors, Inc.*, No. 17-CV-60500, 2018 WL 2455438, at *2 (S.D. Fla. June 1, 2018), *report and recommendation adopted*, No. 17-CIV-60500, 2018 WL 4409844 (S.D. Fla. June 19, 2018) (citing *Florida Medical Ctr. v. McCoy*, 657 So. 2d 1248, 1250 (Fla. 4th DCA 1995)).

### C.      Bill of Costs

Absent a federal statute, civil procedure rule, or order to the contrary, a prevailing party is entitled to an award of its costs. Fed. R. Civ. P. 54(d)(1). The prevailing party must file a bill of costs, adhering to the guidelines outlined in Local Rule 7.3(c), which specifically references 28 U.S.C. § 1920. Under § 1920, the following costs are taxable against the losing party:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

6

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Although a prevailing party is entitled to taxable costs, the Court can still exercise discretion in awarding the costs that § 1920 enumerates. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987). When challenging whether costs are taxable, "the losing party bears the burden of demonstrating that a cost is not taxable, unless the knowledge regarding the proposed cost is within the exclusive knowledge of the prevailing party." *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1333 (S.D. Fla. 2009) (internal citations omitted). Nevertheless, the Court is still limited to taxing only those costs specifically authorized by statute. *E.E.O.C v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) (citing *Crawford Fitting Co.*, 482 U.S. at 445)).

## III.   Analysis

### a.   Subject-Matter Jurisdiction

Plaintiff contends that the Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because "the parties are diverse and the amount in controversy exceeds

7

$75,000[.00], exclusive of interest and costs." [ECF No. 1, ¶ 3]. Diversity jurisdiction is satisfied "where the matter in controversy exceeds the sum or value of $75,000[.00], exclusive of interest and costs" and the litigants are "citizens of different States." 28 U.S.C. § 1332(a)(1).

The jurisdictional amount is satisfied here because the Complaint alleges that the amount at issue is in excess of $75,000.00 and Plaintiff's amended motion states that this action is for $136,363.36 ("plus court costs, and post-judgment interest at [the] rate permitted at law."). [ECF No. 18, ¶ 11]. Additionally, Plaintiff has properly demonstrated to the Court in its Complaint that complete diversity of citizenship exists. Therefore, the Court has original subject-matter jurisdiction over the instant action under 28 U.S.C. § 1332(a).

### b.    Personal Jurisdiction

In addition to subject-matter jurisdiction, a court must also have personal jurisdiction over each defendant. "A judgment rendered in the absence of personal jurisdiction is void and without legal effect." *Strange v. Nescio*, No. 20-80947-CV, 2021 WL 8945480, at *1 (S.D. Fla. Mar. 29, 2021) (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1335 (11th Cir. 2012)). For this reason, "when deciding a motion for default judgment, a court has an affirmative duty to evaluate whether it has personal jurisdiction over the defendant and may raise the issue *sua sponte*." *Id.*

8

"The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted." *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010) (citation omitted).

Service of process is a jurisdictional requirement. "Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003). "[W]ithout proper service of process, the district court ha[s] no power to enter a default judgment against the [defendants]." *Albert v. Discover Bank*, No. 21-12011, 2022 WL 1184405, at *1 (11th Cir. Apr. 21, 2022).

Here, Plaintiff properly served Defendant under Federal Rule of Civil Procedure 4(e)(2) because the process server provided a copy of the necessary documents (i.e., the summons, the Complaint with exhibits, and the coversheet) to Plaintiff's husband and co-resident, Rodney Sims. [ECF No. 8]. Defendant "is subject to jurisdiction by Florida courts" because she is a Florida resident. *Sanshuck v. Guzman*, No. 2:17-MC-14-FTM-99MRM, 2018 WL 8584152, at *3 (M.D. Fla. June 13, 2018) (citing *Mybusinessloan.com, LLC v. Forum Networking Events, Inc.*, No. 8:15-CV-2739-T-36JSS, 2016 WL 3919484, at *3 (M.D.

Fla. June 10, 2016), *report and recommendation adopted*, No. 8:15-CV-2739-T-36JSS, 2016 WL 3906959 (M.D. Fla. July 19, 2016)).

In sum, Plaintiff has demonstrated that this Court has both subject-matter and personal jurisdiction over Defendant.

### c.    Liability

This case is before the Court pursuant to its diversity jurisdiction, and therefore Florida's choice-of-law rules apply. *See Travelers Cas. & Sur. Co. of Am. v. Winmark Homes, Inc.*, 518 F. App'x 899, 901 (11th Cir. 2013). "The duty to indemnity is a substantive obligation under a contract and is therefore governed by the law of the place of contracting." *Allegheny Cas. Co. v. Daher Contracting Inc.*, No. 3:13CV389/MCR/EMT, 2014 WL 13022631, at *2 (N.D. Fla. Apr. 8, 2014) (citing *Jemco, Inc. v. United States Postal Serv., Inc.*, 400 So. 2d 499, 501 (Fla. 3d DCA 1981)). "Further, questions regarding manner or means of performance are governed by the law of the place of performance. *Id.* (citing *Higgins v. W. Bend Mut. Ins. Co.*, 85 So. 3d 1156, 1158 (Fla. 5th DCA 2012)). Florida substantive law applies here because Florida is both the place of contracting and the place of performance. *Liberty Mut. Ins. Co. v. Aventura Eng'g & Const. Corp.*, 534 F. Supp. 2d 1290, 1302 (S.D. Fla. 2008).

Plaintiff's Complaint alleges that Defendant breached their indemnity agreement. [ECF No. 1].

10

"In cases involving contractual indemnity, the terms of the agreement will determine whether the indemnitor is obligated to reimburse the indemnitee for a particular claim." *Camp, Dresser & McKee, Inc. v. Paul N. Howard Co.*, 853 So. 2d 1072, 1077 (Fla. 5th [DCA] 2003). "To recover, the indemnitee has the burden of proving: (1) a breach of the indemnity contract; (2) the amount of the loss sustained; (3) the existence of the facts for which there was coverage; and (4) the reasonableness of the amount paid." *Fidelity & Guar.*, 707 F. Supp. 2d at 1313 (citing *Port Everglades Auth. v. R.S. C. Indus., Inc.*, 351 So. 2d 1148, 1150 (Fla. 4th [DCA] 1976)).

*Allegheny Cas. Co. v. United Const. Co. of Cent. Fla.*, No. 6:12-CV-01363-CEH, 2014 WL 440083, at *9 (M.D. Fla. Feb. 3, 2014).

Plaintiff attached a copy of the executed indemnity agreement to its Complaint. [ECF No. 1-1]. In it, Defendant (the indemnitor) agreed to indemnify Plaintiff (the surety) from loss:

> Indemnitor(s) agree to indemnify Hartford and save it harmless **from any and all loss and expense of whatsoever kind or nature, including but not limited to interest, court costs, attorney fees, incurred by Hartford in connection with or by reason of furnishing any bond hereunder**. The undersigned Indemnitor(s) hereby agree to deposit upon demand with Hartford an amount sufficient to discharge any claim or any such bond, which deposit may be held by Hartford as collateral security against any loss or cost on this bond.

*Id* (emphasis added).

"Consistent with the terms of the indemnity agreement, a surety is entitled to indemnity for all payments made by it in good faith and under a belief that it might be liable, regardless of whether actual liability exists." *Hanover Ins. Co. v. Jasco-Bcbe Joint Venture Co.*, No. 10-20595, 2010 WL 11606068, at *2 (S.D. Fla. May 24, 2010) (citing *Liberty*

*Mut. Ins. Co.*, 534 F. Supp. 2d at 1320–21). Plaintiff's Complaint establishes the following elements for breach of an indemnity contract. It alleges that: (1) Plaintiff entered into a valid contract with Defendant in exchange for it issuing a bond on her behalf; (2) Defendant agreed to indemnify and keep Plaintiff indemnified from any and all such losses and/or expenses which Plaintiff may sustain as a result of issuing the bond; (3) after claims were asserted against the bond, Plaintiff demanded that Defendant repay the related losses suffered pursuant to their agreement; (4) Defendant materially breached the agreement by failing to indemnify Plaintiff and repay the losses suffered as a result of the bond; and (5) Plaintiff has suffered more than $125,000.00[4] of losses, excluding attorneys' fees. [ECF No. 1, ¶¶ 5–18].

"With respect to the [reasonableness] element, an indemnitee makes a *prima facie* showing that its costs and expenses are reasonable by demonstrating that it incurred and paid the sums." *Devs. Sur. & Indem. Co. v. Roofing*, No. 3:15-CV-655-J-34PDB, 2017 WL 2350280, at *3 (M.D. Fla. May 31, 2017) (citing *Travelers Cas. & Sur. Co. of Am. v. Grace & Naeem Uddin, Inc.*, No. 08–61868–CIV, 2009 WL 3878297, at *2 (S.D. Fla. Nov. 18, 2009); *Travelers Cas. & Sur. Co. of Am. v. Winmark Homes, Inc.*, 518 F. App'x 899, 903–04 (11th Cir. 2013) (awarding an indemnitee attorney's fees and expenses under an indemnity

---

[4]    Plaintiff's Complaint specifically states that it has suffered losses under the bond of at least $129,968.10[.] [ECF No. 1, ¶ 13].

agreement because the indemnitee made a *prima facie* showing of its loss, which the defendant failed to rebut)).

Plaintiff attached a copy of a "detailed loss report" to its Complaint. [ECF No. 1-2]. It includes (but is not limited to) the following information: reported date (9/2/2022); loss date (9/1/2022); claim number; paid losses ($125,000.00); paid expenses ($4,968.10); and policy number. Plaintiff also attached a copy of the demand letter it mailed Defendant to retrieve payment for the charges it incurred as a result of Plaintiff's breach. [ECF No. 1-3]. In the letter, Plaintiff demanded "reimbursement of $129,805, which is broken down as follows: $125,000 paid to the Court in connection with the claim against the Bond; and $4,805 for attorney's fees and expenses through Monday, February 13, 2023." *Id* at 2.

Plaintiff further addressed the reasonable element with its motion. Plaintiff attached a sworn declaration[5] from its attorney, Brandon K. Bains. [ECF No. 18-2]. In it, Mr. Bains describes how the requested attorneys' fees and expenses are reasonable based on the "Florida Bar Rules of Professional Conduct, Rule 4-1.5; as well as [*Fla.*] *Patient Comp. Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985), and *Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828 (Fla. 1990)[.]". Plaintiff also attached a copy of its internal ledger "identifying the losses as of May 31, 2023[.]" [ECF No. 18-1, p. 5]. The internal leger reflects

---

[5]     At the Undersigned's request [ECF No. 20], Mr. Bains filed an amended declaration correcting a scrivener's error. [ECF No. 21].

that the firm paid $125,000.00 (the amount of the bond) to the Broward County Clerk of Court Registry on February 8, 2023. *Id*. It also includes various entries for attorneys' fees.

Here, the well-pled allegations in the Complaint, deemed admitted by virtue of Defendant's default,[6] establish Defendant's liability for the claim asserted. Therefore, Plaintiff has shown that Defendant is liable for breach of indemnity agreement.

### d.    Damages

"Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages." *Gov't Emps. Ins. Co. v. Compass Med. Ctrs. Inc.*, No. 21-CV-23623, 2022 WL 17653816, at *2 (S.D. Fla. Nov. 10, 2022), *report and recommendation adopted*, No. 21-23623-CIV, 2022 WL 17602650 (S.D. Fla. Dec. 13, 2022). Even in the default judgment context, the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d

---

[6]    *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1339 (11th Cir. 2014).

1342, 1346 (M.D. Fla. 1999) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 2688 at 58–59 (3d ed. 1998)).

Plaintiff seeks $136,363.36 "plus court costs, and post-judgment interest at [the] rate permitted by law." [ECF No. 18, ¶ 11]. Of this amount, $125,000.00 is attributed to the bond it issued for Defendant. Plaintiff's request related to the bond is supported by the copy of the indemnity agreement; the ledger reflecting when they paid the bond amount to the Broward Clerk of Court and the specific check used; the demand letter; and two declarations.[7] *See* [ECF Nos. 18-1; 18-2]. The Undersigned recommends that the Court should award Plaintiff $125,000.00 in damages because it established Defendant's liability and is entitled to repayment of the issued bond.

<u>*Attorneys' Fees*</u>

Many of those same items support Plaintiff's other request for attorneys' fees and costs. Attached to Mr. Bains' declaration are billing entries for three timekeepers: Mr. Bains, Caitlyn Goodwin, and Rachel Edwards. [ECF No. 18-2, pp. 7–36]. However, in his declaration, Mr. Bains informed the Court that the entries assigned to Rachel Edwards are *actually associated* with him, and that her name was listed "due to a technical error." *Id*. at 4 n.3.

---

[7]     The declarations are by Benjamin Chambers, Plaintiff's Director of Bond Claims, and Brandon K. Bains, Plaintiff's legal counsel. [ECF Nos. 18-1; 18-2].

Plaintiff states that it is entitled to both attorneys' fees and court costs because they qualify as defined losses under the Indemnity Agreement. [ECF No. 18, p. 6 (citing *Fid. & Guar. Ins. Co. v. Ford Motor Co.*, 707 F. Supp. 2d 1300, 1313 (M.D. Fla. 2010) ("The terms of the contract determine whether the indemnitor is obligated to reimburse the indemnitee for a particular claim." (quoting *Camp, Dresser & McKee, Inc. v. Paul N. Howard Co.*, 853 So. 2d 1072, 1077 (Fla. 5th DCA 2003))))]. The Undersigned agrees because Defendant, the indemnitor, agreed to indemnify Plaintiff, the surety, from both attorneys' fees and court costs. The Indemnity Agreement specifically stated:

> Indemnitor(s) agree to indemnify Hartford and save it harmless **from any and all loss and expense of whatsoever kind or nature, including but not limited to interest, court costs, attorney fees, incurred by Hartford in connection with or by reason of furnishing any bond hereunder**. The undersigned Indemnitor(s) hereby agree to deposit upon demand with Hartford an amount sufficient to discharge any claim or any such bond, which deposit may be held by Hartford as collateral security against any loss or cost on this bond.

[ECF No. 1-1 (emphasis added)].

"A surety must establish that any request to be indemnified for attorney fees and costs is 'reasonable,' which is distinct from whether the fees and costs were incurred in "good faith." *Int'l Fid. Ins. Co. v. Kerri A. Noyes Constr., Inc.*, No. 17-CV-80937, 2018 WL 11419655, at *15 (S.D. Fla. Apr. 17, 2018) (citing *Grace & Naeem Uddin, Inc.*, No. 08-61868, 2009 WL 4110110, at *2-4 (S.D. Fla. Nov. 24, 2009); *Am. S. Ins. Co. v. Nestor*, No. 16-23550, 2017 WL 2972841, at *6 (S.D. Fla. July 12, 2017); *Sork v. United Ben. Fire Ins. Co.*, 161 So. 2d

54, 56 (Fla. 3d DCA 1964)). A plaintiff may meet this burden by filing sworn affidavits with the Court. *Am. Contractors Indem. Co. v. Lampert*, No. 13-80775-CIV, 2014 WL 11516084, at *4 (S.D. Fla. June 18, 2014), *report and recommendation adopted*, No. 13-CV-80775, 2014 WL 11515869 (S.D. Fla. July 30, 2014) (citing *Liberty Mut. Ins. Co.*, 534 F. Supp. 2d at 1301.).

Mr. Bains' amended declaration states that:

The fees charged in connection with the Lawsuit, are customarily charged in this area for the same or similar services for an attorney with my experience, reputation, and ability, considering (1) the amount in controversy in the Lawsuit; (2) the time limitations imposed; (3) the fee customarily charged in the locality for similar legal services; (4) the results Hartford sought to obtain; and (5) the nature and length of the professional relationship between the Firm and Hartford.

[ECF No. 21, ¶ 10].

Mr. Bains' declaration additionally described the type of work performed in relation to this case, his professional experience, his billing rate ($310) and how much time was spent on this case. Based on the information provided in his declaration (and in the absence of Defendant's objection), the Undersigned finds Mr. Bains' hourly rate of $310 to be reasonable. *See Am. Contractors Indem. Co.*, 2014 WL 11516084, at *4 (finding that the surety's attorney's hourly rate of $340 was reasonable).

Mr. Bains contends that "the number of hours worked on this matter, either by [him] or by other attorneys at the Firm, total 35.7 hours . . . ." [ECF No. 21, ¶ 7]. The billing

records attached to his declaration account for the activity of two people: Mr. Bains and Ms. Goodwin. However, as explained below, the Undersigned will review only the hours expended by Mr. Bains (and not by Ms. Goodwin).

Out of the 35.7 hours, only 29.6 are attributable to Mr. Bains. *See* [ECF No. 18-2, pp. 7–36]. In reviewing the hours Plaintiff submitted, the Undersigned found multiple entries that the Court deems unreasonable. These problematic entries relate to block billing:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12/09/2022 | REE | L120 | A104 | Analysis of proposed Order addressing distribution of funds and correspondence with counsel for the Successor, as well as the client, regarding same. | 310.00 | 0.80 | 248.00 |
| BB | | 06/05/2023 | | A103 Draft/revise L250 Other Written Motions and Submissions: Preparation of Motion for Default Judgment and supporting Declaration, and correspondence with Ben Chambers regarding same. | 0.80 | $310.00 | $248.00 |

*Id.* at 13; 25.[8]

"'Block billing' occurs when an attorney lists all of the day's tasks on a case in a single entry and does not separate the tasks and the time spent working on those

---

[8]     Other examples of block billing include the following entries: 10/31/2022 .6 hours for "Analysis of documentation provided by Kelvin Farmer in support of his claim and multiple communications with his counsel, as well as counsel for the Successor, regarding same."; 4/5/2023 .7 hours for "Continue preparation of proposed lawsuit against Sims and correspondence with the client regarding same."; 12/15/2023 .5 hours for "Analysis of the Order adopting the R&R for the Surety's Motion for Default and case strategy regarding plan of action in response." [ECF No. 18-2, pp. 9–10; 21; 36].

individual tasks as separate entries on billing records." *Plumbers & Pipefitters Union No. 421 Health & Welfare Fund v. Brian Trematore Plumbing & Heating, Inc.*, No. 5:11-CV-221, 2013 WL 3816660, at *4 (M.D. Ga. July 22, 2013).

The practice of block billing is disfavored because it prevents the Court from accurately ascertaining the amount of time spent on each discrete task. *See Lil' Joe Wein Music, Inc. v. Jackson*, No. 06-20079-CIV, 2008 WL 2688117, at *11 (S.D. Fla. July 1, 2008) (noting that block billing "makes it difficult to establish whether the amount of time spent on any one task was reasonable"). Nonetheless, "[a]s a general proposition block billing is not prohibited so long as the Court can determine from the time entry the services that were performed." *Home Design Servs., Inc. v. Turner Heritage Homes, Inc.*, No. 4:08-CV-355-MCR-GRJ, 2018 WL 4381294, at *6 (N.D. Fla. May 29, 2018), *report and recommendation adopted*, No. 4:08CV355/MCR/GRJ, 2018 WL 6829047 (N.D. Fla. Sept. 28, 2018).

In the instant case, the block billed entries, totaling 3.7 hours, should be reduced by 40%[9] because there is no way to determine the amount of time counsel spent on each of the specific tasks mentioned in the block-billed entries. The Undersigned finds the remaining time expended by Mr. Bains (28.12 hours) to be reasonable. Therefore, Plaintiff's request should be **granted in part** and it should be awarded **$8,717.20** for Mr. Bains' attorney's fees.

---

[9]     40% of 3.7 is 1.48.

With regards to Ms. Goodwin, when the Undersigned recommended that Plaintiff's first motion for default judgment be denied, I stated the following:

> However, Plaintiff fails to provide **any** evidence explaining what those expenses were, which attorneys or paralegals or staff worked on them, how many hours were used, what their hourly fee was and **why it is reasonable**. Without that information, the Court cannot determine whether Plaintiff's damages request should be granted.

[ECF No. 15, p. 6 (emphasis added)].

Plaintiff's amended motion failed to cure this defect with respect to Caitlyn Goodwin. Plaintiff's motion is void of *anything* informing the Court of who Caitlyn Goodwin is, what legal experience she has, and why this Court should find her fees reasonable based on her experience. All we know is that Caitlyn Goodwin is (presumably) an attorney charging $250.00 an hour. Mr. Bains' declaration states the following:

> The Firm agreed to be compensated for work based on an hourly fee. I have reviewed the billing entries in the Lawsuit. To date, the number of hours worked on this matter, either by me or by other attorneys at the Firm, total 35.7 hours, with the hourly billing rate for attorneys ranging from $250 to $310, for total fees in the amount of $11,363.36. The billing rates for the attorneys representing Hartford constitute reasonable charges for attorney services in matters similar to this case.[10] In addition, all attorneys' fees claimed in this Declaration represent fees only for fee-bearing claims.

[ECF No. 18-2, ¶ 7].

---

[10]   Plaintiff did not provide any legal citations where courts either in or out of this District have agreed with this statement.

Here, Plaintiff has the burden of presenting evidence of the hours Ms. Goodwin worked and the rates claimed. *Hensley*, 461 U.S. at 433. The prevailing party **cannot simply provide affidavits** attesting to the reasonableness of the rates. *Norman*, 836 F.2d at 1299. Judges are themselves experts in assessing the reasonableness of attorney's fees and may form an independent judgment as to the amount and reasonableness of those fees. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *see also Crescenzo v. Healthcare Revenue Recovery Grp., LLC*, No. 11-60384-CIV, 2012 WL 291431, at *2 (S.D. Fla. Jan. 31, 2012). In reviewing the hourly rate and attorney time for reasonableness, courts look to the twelve[11] so-called "*Johnson* factors," including the experience, reputation, and ability of the attorneys. *PNC Bank, N.A. v. Colmenares Bros., LLC*, No. 21-CV-24229, 2022 WL 4631908, at *8 (S.D. Fla. Aug. 29, 2022), *report and recommendation adopted*, No. 21-CV-24229, 2022 WL 4598684 (S.D. Fla. Sept. 30, 2022) (citing *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1340–41 (11th Cir. 1999); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) (abrogated on other grounds)). Therefore, the fees request

---

[11] The twelve *Johnson*-factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

associated with Ms. Goodwin should be **denied** in its entirety because it is insufficiently supported.

<u>Costs</u>

Embedded within the billing records are certain expenses totaling $662.36, divided as follows: (1) $402.00 in filing fees; (2) $243.56 in process server fees; and (3) $16.80 in postage fees. *See* [ECF No. 18-2, pp. 17; 24–25]. Plaintiff is entitled to the $402.00 filing fee under § 1920 as a taxable cost.

Plaintiff's request as to the process server fees should be denied in part because it failed to provide an invoice detailing the process server's hourly rate. In the Eleventh Circuit, "service of process fees may be paid to private process servers so long as the amount does not exceed the amount charged by the U.S. Marshal for service of process." *Barrera v. Weiss & Woolrich S.*, 900 F. Supp. 2d 1328, 1332 (S.D. Fla. 2012) (citing *E.E.O.C.*, 213 F.3d at 624). The United States Marshals Service charges "$65 per hour (or portion thereof) for each item served by one U.S. Marshals Service employee, agent, or contractor, plus travel costs and any other out-of-pocket expenses." 28 C.F.R. § 0.114(a)(3).

Here, Plaintiff's motion fails to state the number of attempts made by the process server or information regarding travel costs and out of pocket expenses. "Without this information, the Court must assume that service was made on the first attempt." *RMK Merrill Stevens LLC v. Monaco*, No. 22-CV-23210, 2024 WL 384655, at *5 (S.D. Fla. Jan. 8,

22

2024), *report and recommendation adopted*, No. 22-23210-CV, 2024 WL 379948 (S.D. Fla. Feb. 1, 2024). Thus, the Court should award Plaintiff only $65.00 for the process server fees, the rate charged by the U.S. Marshals service. *Id*. (citing *Venus Concept USA Inc. v. Smith High Inc.*, No. 1:21-CV-21558-KMM, 2022 WL 7609495, at *5 (S.D. Fla. Sept. 28, 2022), *report and recommendation adopted*, No. 1:21-CV-21558-KMM, 2022 WL 7514591 (S.D. Fla. Oct. 13, 2022) ("Plaintiff can recover no more than $65.00 per service. . . .").

Additionally, Plaintiff's request for $16.80 in postage fees must be denied because it is not entitled to them under § 1920. *James v. Wash Depot Holdings, Inc.*, 242 F.R.D. 645, 649 (S.D. Fla. 2007). Therefore, the Court should award Plaintiff **$467.00** in costs.

## IV.   Conclusion

Accordingly, the Undersigned **respectfully recommends** that the Court **grant** Plaintiff's amended motion [ECF No. 18] **in part** related to the issue of liability and award it **$134,184.20** ($125,000.00 in damages, $8,717.20 in attorney's fees, and $467.00 in costs), plus post-judgment interest.[12]   The Court should then **deny** Plaintiff's request for attorney's fees related to Caitlyn Goodwin and the costs associated with postage fees.

---

[12]     Plaintiff seeks post-judgment interest. [ECF No. 18, ¶ 11]. "[P]ost-judgment interest automatically accrues under 28 U.S.C. § 1961." *Landi v. Home Depot USA, Inc.*, No. 2:17-CV-701-FtM-38MRM, 2020 WL 10465289, at *1 (M.D. Fla. July 22, 2020).

Plaintiff must provide a copy of this Report and Recommendations to Defendant. Plaintiff will file a notice of compliance on CM/ECF by no later than **Wednesday, March 20, 2024**.

**V.      Objections**

The parties will have seven (7)[13] days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with Senior United States District Judge Robert N. Scola, Jr. Each party may file a response to the other party's objection within seven (7) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on March 13, 2024.

---

[13]      The Undersigned is shortening the deadlines because Defendant has defaulted, and it therefore appears unlikely that she will respond in any way, including the filing of Objections.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All Counsel of Record